**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEVERLY A. BARAJAS, ) | Case No. EDCV 14-2448-JPR |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | **AFFIRMING COMMISSIONER** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed September 15, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

1

**II.   BACKGROUND**

Plaintiff was born in 1962.  (Administrative Record ("AR") 130.)  She obtained a GED (AR 36, 154) and worked as a kitchen helper and cafeteria counter attendant (AR 24).

On December 15, 2011, Plaintiff submitted an application for DIB, alleging that she had been unable to work since December 18, 2009, because of tendinitis and "[l]ower back, shoulder, neck, and heel problems."  (AR 130, 154.)  After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.  (AR 14.)  A hearing was held on June 25, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 30-50.)  In a written decision issued August 16, 2013, the ALJ found Plaintiff not disabled.  (AR 19-25.)  On October 30, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work

3

activities; if not, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination comprises the fifth and final step in the sequential analysis.  § 404.1520(a)(4)(v); Lester, 81 F.3d at 828

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

n.5; <u>Drouin</u>, 966 F.2d at 1257.

B. <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 18, 2009, the alleged onset date. (AR 21.) At step two, he concluded that Plaintiff had the severe impairments of degenerative disc disease "involving the cervical spine status post fusion," "right shoulder impairment," "left knee impairment," and obesity. (<u>Id.</u>) He also found that "[n]o severe psychiatric impairment [was] credibly asserted or established."[2] (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. (<u>Id.</u>) At step four, he found that Plaintiff had the RFC to perform light work except that she could lift or carry "no more than 20 pounds occasionally and 20 pounds frequently," "sit six hours out of eight provided normal breaks," and "stand and/or walk no more than two hours out of eight." (<u>Id.</u>) She was limited to "no more than occasional postural activities" and "no more than occasional overhead reaching bilaterally." (<u>Id.</u>) She was precluded from "work involving ladders, ropes[,] scaffolds or crouching" and "work at unprotected heights or around dangerous unguarded moving machinery." (<u>Id.</u>) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a "combination kitchen helper/cafeteria counter attendant." (AR 24.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. (<u>Id.</u>) Accordingly, he found her not disabled.

---

[2] The ALJ made this finding in step four. (AR 21.)

(AR 25.)

**V.  DISCUSSION**

Plaintiff claims the ALJ erred in assessing her credibility and the opinion of her treating physician's assistant.  (J. Stip. at 2-3.)  For the reasons discussed below, remand is not warranted.

A.  The ALJ Properly Assessed Plaintiff's Credibility

1.  Applicable law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."

6

1  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in
2  original).

3      If the claimant meets the first test, the ALJ may discredit
4  the claimant's subjective symptom testimony only if he makes
5  specific findings that support the conclusion.  See Berry v.
6  Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or
7  affirmative evidence of malingering, the ALJ must provide "clear
8  and convincing" reasons for rejecting the claimant's testimony.[3]
9  Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (as
10  amended); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir.
11  2014).  The ALJ may consider, among other factors, (1) ordinary
12  techniques of credibility evaluation, such as the claimant's
13  reputation for lying, prior inconsistent statements, and other
14  testimony by the claimant that appears less than candid; (2)
15  unexplained or inadequately explained failure to seek treatment
16  or to follow a prescribed course of treatment; (3) the claimant's
17  daily activities; (4) the claimant's work record; and (5)
18  testimony from physicians and third parties.  Rounds v. Comm'r
19  Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
20  amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
21  2002).  If the ALJ's credibility finding is supported by
22  substantial evidence in the record, the reviewing court "may not
23  engage in second-guessing."  Thomas, 278 F.3d at 959.

24
25

26      [3] The Commissioner objects to the clear-and-convincing
   standard but acknowledges that her argument was rejected — again
27  — in Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014).
   (J. Stip. at 13 & n.13); see also Brown-Hunter v. Colvin, 806
28  F.3d 487, 493 (9th Cir. 2015) (as amended) (reaffirming Burrell).

1          2.  Relevant background

2      At the hearing, Plaintiff testified that she stopped working

3  because of neck and shoulder injuries.  (AR 34.)  She testified

4  that she had pain in her left and right heels, left knee, left

5  hip, lower back, "wrist," and "upper extremities and neck and

6  right shoulder and my right arm."  (AR 38-39.)  She stated that

7  she could not walk properly because of the pain in her heels,

8  left knee, and left hip.[4]  (AR 37.)  The pain in her neck and

9  right arm prevented her from doing "anything repetitive," and

10  overuse of her left wrist caused pain there as well.  (Id.)

11      Plaintiff testified that she had surgeries on her neck and

12  left knee.  (AR 34, 40.)  After surgery, her neck was "much

13  better but not good."  (AR 41.)  She no longer had "really bad

14  headaches and pressure in [her] ear and [her] head from the

15  pain."  (Id.)  She testified that she took "mostly" Motrin for

16  pain and that although it didn't "ever take the pain away," it

17  "help[ed] as much as it" could and improved her "movement."  (AR

18  42.)  Although her doctors had talked to her about surgery for

19  her right shoulder, she was afraid to have it because she still

20  had pain in other parts of her body.  (AR 40-41.)

21      Plaintiff testified that on a typical day, she got up, made

22  coffee, ate breakfast, and "kind of just lay around the house, be

23  depressed."  (AR 36.)  She watched movies or the news at home

24  while lying down and spent a few minutes on the computer to check

25  her daughter's email or go on Facebook.  (AR 44.)  Plaintiff

26

27
    [4] Plaintiff did not allege left-knee pain in her benefits
28  application.  (See AR 154.)

8

testified that she tried to "sometimes walk inside the house, back and forth just in the kitchen to the living room," but was depressed because she wasn't able to do the things she used to. (AR 36-37.)  She could not sleep without medication because there was "no comfortable position."  (AR 39.)

Plaintiff testified that her ability to do household chores was "minimal" and that her daughters did most of them, including folding clothes and cooking.  (AR 37-38.)  They also helped her with shopping, running errands, and taking care of herself.  (AR 37-38, 40.)  When asked how long she could stand up to cook before needing to sit down, Plaintiff stated, "maybe five minutes."  (AR 37-38.)  She could drive "but not long distance" because she didn't know when her neck might "lock up."  (AR 37.)  Plaintiff testified that she spent about an hour a week at church, although she used to be able to attend twice or more a week.  (AR 39.)  Although she could go to the movies with friends, she couldn't remember the last movie she saw and it was more than six months earlier.  (AR 42-44.)

3.  <u>Analysis</u>

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible."  (AR 23.)  As discussed below, the ALJ provided clear and convincing reasons for discounting Plaintiff's allegations.

The ALJ discounted Plaintiff's allegations of neck, arm, and left-knee pain because they were inconsistent with evidence

showing significant improvement after her surgeries.  (<u>See</u> AR 22
(noting "improved neck pain and complete resolution of arm pain"
after surgery), 23 (noting that "range of motion of the left knee
was improved subsequent to surgery").)   Indeed, progress notes
from after Plaintiff's May 2011 neck surgery stated that her arm
pain "resolved," she had "little neck pain," and she "was overall
happy with surgery."  (AR 799 (June 2, 2011), 721 (June 30,
2011), 923 (Feb. 2012), 935 (Apr. 2012)); <u>see De Guzman v.</u>
<u>Astrue</u>, 343 F. App'x 201, 205-06 (9th Cir. 2009) (ALJ properly
discounted claimant's allegations of headaches and neck pain when
"successful" cervical-spine surgery resulted in increased
mobility and reduced neck pain).  In November 2012, Plaintiff
again reported "improved neck pain following surgery," exhibited
no tenderness or spasms in her paracervical muscles or spinous
processes, had only decreased sensation in her right C7 dermatome
distribution,[5] and was negative for Hoffmann's sign.[6]  (AR 1133.)
Likewise, the record showed marked improvement in Plaintiff's
left knee after her October 2011 surgery.  In July 2012, she
reported "[w]alking more" and had "better" range of motion, zero
heel-height discrepancy, and no swelling, effusion, or

---

[5] A dermatome is an area of skin in which sensory nerves
come from a single spinal nerve root.  Compressed spinal nerve
roots may exhibit symptoms in their corresponding dermatomes.
The C7 dermatome encompasses the middle finger.  <u>Dermatomes</u>
<u>Anatomy</u>, Medscape, http://emedicine.medscape.com/article/
1878388-overview#showall (last updated Aug. 12, 2015).

[6] The Hoffmann sign is a clinical test for evaluating
cervical spinal-cord compression.  <u>See</u> John A. Glaser et al.,
<u>Cervical Spinal Cord Compression and the Hoffmann Sign</u>, 21 Iowa
Orthopaedic J. 49, 49 (2001), http://www.ncbi.nlm.nih.gov/pmc/
articles/PMC1888193/pdf/1555-1377v021p049.pdf.

tenderness.  (AR 1080.)  The ALJ was entitled to consider this objective medical evidence in assessing Plaintiff's credibility concerning her pain.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

The ALJ also found Plaintiff not credible because she had not sought or received any treatment for her alleged depression and required only mild treatment for her alleged neck, arm, and left-knee pain.  (See AR 22 (noting that Plaintiff was "treated conservatively" after neck surgery), 23 (noting lack of medication and other treatment for alleged depression), 24 (noting that Plaintiff's pain was "controlled with mild analgesics").)  Indeed, as the ALJ noted regarding her alleged depression, Plaintiff acknowledged to state-agency physicians that she was not taking any medication for depression and denied any history of emergency-room visits, hospitalizations, or outpatient treatment because of depression.  (AR 66.)  She explained that she felt depressed "sometimes because of her physical limitations."  (Id.)  Additionally, in her disability report, she listed only Tylenol in her list of medications and in response to a question asking if she had ever seen a doctor or

received treatment at a hospital or clinic for any mental
conditions, she answered, "No."  (AR 156.)

   And as the ALJ noted regarding her physical impairments,
Plaintiff was able to treat her neck, arm, and left-knee pain
with "mild analgesics" after her surgeries.[7]  (AR 24; see AR 42
(Plaintiff testifying that she took "mostly" Motrin for pain and
that it improved her "movement" and "help[ed] as much as it"
could), 1080 (in July 2012, doctor noting that Plaintiff needed
only "[o]ccasional acetaminophen [sic]" for left knee)); see De
Guzman, 343 F. App'x at 204-05 (ALJ properly noted routine and
conservative treatment in finding claimant not credible when neck
pain after surgery was "well controlled with Tylenol").
Plaintiff also did not need an "assistive handheld device for
ambulation."[8]  (AR 24; see AR 864 (few days after Oct. 27, 2011

---

   [7] Plaintiff argues that the ALJ was inaccurate in stating
that she was able to control her pain with "mild analgesics"
because she received "aggressive treatments including surgery,
and injections."  (J. Stip. at 11-12.)  But the ALJ made that
statement only after acknowledging her history of injections,
neck surgery, and left-knee surgery, as well as her eligibility
for right-shoulder surgery.  (See AR 22-23.)  And most of
Plaintiff's injections occurred before her surgeries.  (See,
e.g., AR 303 (Nov. 2009 cervical injection), 535 (Apr. 2010
cervical injection), 327 (Dec. 2010 right paraspinal injection
and orthopedic surgeon recommending neck surgery).)  Aside from
an injection for her left knee in February 2012 (AR 875), she did
not receive any injections for her neck or left knee after her
surgeries.  The injections she did have were for her right
shoulder.  (AR 747 (June 2011), 785 (Sept. 2011), 1135 (Nov.
2012).)  Thus, the ALJ was correct in finding that Plaintiff was
able to control her symptoms after her left-knee and neck
surgeries with mild pain medication.

   [8] Plaintiff contends that the fact that she did not use an
"assistive handheld device for ambulation" was irrelevant to
                                        (continued...)

left-knee surgery, Plaintiff was "doing well" and "ambulating

with out [sic] crutches"), 183 (Plaintiff indicating in Oct. 2012

function report that she did not use crutches, walker,

wheelchair, cane, or brace).)

That Plaintiff received no treatment for her alleged

depression and was able to control her neck, arm, and left-knee

pain with medication after her surgeries was a clear and

convincing reason for discrediting her testimony.  See Tommasetti

v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (that claimant

"did not seek an aggressive treatment plan" undermined

allegations of disabling impairment); id. at 1039 (ALJ may

discount claimant's testimony in light of "unexplained or

inadequately explained failure to seek treatment or to follow a

prescribed course of treatment"); Ortez v. Comm'r of Soc. Sec.,

No. CIV S-10-2096-CMK, 2012 WL 3727136, at *6 (E.D. Cal. Aug. 24,

2012) (affirming ALJ's credibility determination based in part on

"conservative treatment following surgery"); Ramirez v. Astrue,

No. CV 10-04188 RZ, 2011 WL 1113973, at *2 (C.D. Cal. Mar. 25,

2011) (upholding ALJ's finding that "residual pain following

[back] surgery was treated conservatively and did not prevent

[claimant] from performing work"); SSR 96-7p, 1996 WL 374186, at

*7 (claimant's statements "may be less credible if the level or

frequency of treatment is inconsistent with the level of

complaints").

---

[8] (...continued)
discounting her allegations of neck pain.  (J. Stip. at 11.)
While that may be true, it was certainly relevant to discrediting
her testimony that she could not walk because of pain in her left
knee and hip.  (See AR 37.)

1    In discounting Plaintiff's allegations of disabling

2   depression and pain, the ALJ noted her daily activities.  (AR

3   23.)  Indeed, Plaintiff's testimony that on a typical day she

4   "kind of just lay around the house, be depressed" (AR 36) was

5   contradicted by her and her niece's statements in October 2012

6   function reports that she went outside daily and spent time with

7   others by shopping, watching movies with friends, going to the

8   casino, and attending church weekly.  (AR 180-81, 189-90); see

9   Wilson v. Comm'r, Soc. Sec. Admin., No. 6:14-cv-01326-HZ, 2015 WL

10  5919881, at *4 (D. Or. Oct. 8, 2015) (ALJ properly found claimant

11  not credible when her "allegations of crippling anxiety were

12  contradicted by her involvement at church, multiple casino trips,

13  and her ability to shop with friends and manage her finances").

14  She also stated that she attended her daughters' soccer games (AR

15  181), took them to school, and picked them up (AR 178, 187).

16  Further, in August 2012, Plaintiff was feeling sufficiently

17  better to ride a bicycle occasionally.  (AR 1086.)  Plaintiff did

18  not testify that her pain or depression had gotten worse lately,

19  which could conceivably have accounted for the discrepancy

20  between the function reports and her testimony just a few months

21  later.  That Plaintiff's allegations of depression and pain were

22  inconsistent with her daily activities was a clear and convincing

23  reason for discrediting them.  See Molina, 674 F.3d at 1112 (ALJ

24  may discredit claimant's testimony when "claimant engages in

25  daily activities inconsistent with the alleged symptoms" (citing

26  Lingenfelter, 504 F.3d at 1040)).

27    Plaintiff asserts that the ALJ erred in finding her not

28  credible based on her daily activities because they did not

14

demonstrate that she was "capable of sustaining full time employment on a consistent basis." (J. Stip. at 11.)  It is true that an ALJ may discount a claimant's testimony when her daily activities indicate "capacities that are transferable to a work setting."  Molina, 674 F.3d at 1113.  But even when those activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id.; see also Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").  Here, the ALJ properly discounted Plaintiff's testimony because her socializing with family and friends was inconsistent with the severity of her alleged depression.  See Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (finding that ALJ properly rejected claimant's testimony based on inconsistency with his daily activities, noting that even though daily activities did "not suggest [claimant] could return to his old job, . . . it did suggest that his later claims about the severity of his limitations were exaggerated").

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff not credible.  Because those findings were supported by substantial evidence, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959.  Plaintiff is not entitled to remand on this ground.

15

B. <u>The ALJ Properly Assessed the Opinion of the</u>
<u>Physician's Assistant</u>

1. <u>Applicable law</u>

An opinion from a nonacceptable medical source, including physician's assistants, may be rejected for "germane" reasons. <u>Molina</u>, 674 F.3d at 1111; <u>see also</u> § 404.1513(a) ("[a]cceptable medical sources" include only licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists).

2. <u>Relevant background</u>

Jame Lanier was a physician's assistant and worked with Dr. Darren Bergey, Plaintiff's treating orthopedic surgeon, at Bergey Spine Institute. (<u>See, e.g.</u>, AR 954, 960, 964, 969, 974, 979, 988, 993, 1003, 1026, 1031, 1036, 1041, 1048.) Plaintiff was treated at Bergey Spine Institute from November 2009 to April 2012 (<u>see</u> AR 929-1058), when she was declared permanent and stationary for purposes of her state workers'-compensation case (AR 935). Seven months later, in November 2012, she returned to Dr. Bergey for treatment of a flare-up of pain. (AR 1132.)

On May 7, 2013, Lanier completed a form entitled "Medical Source Statement of Ability to do Work Related Activities (PHYSICAL)." (AR 1139-41.) He indicated a diagnosis of "C5-6 + C6-7 disc degeneration," with symptoms of "[n]eck upper back shoulder pain" and "spasm." (AR 1139.) He did not respond to a question asking, "Identify any clinical findings and signs." (<u>Id.</u>) Lanier opined that Plaintiff could walk half an hour "without rest or severe pain" and sit for 15 minutes or stand for 30 minutes at a time. (<u>Id.</u>) He opined that in an eight-hour workday, Plaintiff could sit "about 3" hours and, apparently,

stand or walk "about" two or four hours.[9]  (AR 1139-40.)  Lanier
assessed that Plaintiff could lift or carry 10 pounds rarely and
less than 10 pounds occasionally.  (AR 1140.)  Plaintiff could
rarely perform twisting, stooping, crouching, climbing ladders,
climbing stairs, balancing, or kneeling.  (Id.)  Lanier also
indicated that Plaintiff could rarely reach in front or overhead.
(AR 1141.)

The ALJ gave "no weight" to Lanier's opinion.[10]  (AR 23.)
He noted that Lanier's functional assessment "appear[ed] on a
pre-printed form solicited by [Plaintiff's] representative and
appear[ed] through a series of checked boxes and without any
specific clinical or objective support."  (Id.)  The ALJ also
noted that Lanier's "accommodating disabling assessment" was
"inconsistent with the totality of the medical evidence of
record" and was "nothing more than an egregious accommodation by
the preparer to his patient."  (Id.)

### 3.  Analysis

The ALJ gave no weight to Lanier's opinion that Plaintiff
could lift or carry less than 10 pounds occasionally and 10
pounds rarely and could sit three hours and stand or walk two or
four hours in an eight-hour workday.  (AR 23; see AR 1140.)

---

[9] Although the form provided boxes for indicating that the
patient could stand or walk for "less than 2 hours," "about 2
hours," "about 4 hours," or "at least 6 hours," Lanier did not
check any of them.  (AR 1140.)  Instead, he wrote "about" near
the "about 2 hours" and "about 4 hours" boxes, and it is not
clear which box he intended to indicate, if any.  (Id.)

[10] The ALJ referred to Lanier as "Dr. Lamar" (AR 23), likely
because his signature and printed name were illegible (see AR
1141).

1  Because Lanier was a physician's assistant, he was a
2  nonacceptable medical source.  (J. Stip. at 21); see
3  § 404.1513(d) ("physicians' assistants" are "other sources"); SSR
4  06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("physician
5  assistants" are not acceptable medical sources).  Thus, the ALJ
6  needed to give only germane reasons for rejecting Lanier's
7  opinion, see Molina, 674 F.3d at 1111, which he did.[11]

8      The ALJ rejected Lanier's opinion because it was "a series
9  of checked boxes" and lacked "specific clinical or objective
10  support."  (AR 23.)  Indeed, although the form instructed Lanier
11  to "[i]dentify any clinical findings and signs," he left the
12  question blank.  (AR 1139.)  He also did not describe Plaintiff's
13  treatment or prognosis in the space provided on the form.  (Id.)
14  That Lanier's opinion consisted mostly of checked boxes and

15

16      [11] Plaintiff notes that Lanier treated her "in conjunction
    with her orthopedic surgeon."  (J. Stip. at 21-22.)  The Ninth
17  Circuit has held that "other sources" may qualify as acceptable
    medical sources if they worked under a physician's close
18  supervision.  Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)
    (finding that ALJ properly considered nurse practitioner's
19  opinion as opinion of supervising physician).  Subsequent cases,
    however, have questioned whether Gomez remains good law given
20  that the regulations on which it partly relied have since been
    repealed.  See Molina, 674 F.3d at 1111 n.3.  In any event, the
21  Court need not address the issue because Plaintiff nonetheless
    concedes that the "germane" standard applies.  (See J. Stip. at
22  22 (citing Molina for its holding that "ALJ may only discount
    testimony from lay witnesses if he gives reasons germane to each
23  witness"), 23 (arguing that one of ALJ's reasons was "not
    germane").)  Moreover, even if Lanier qualified as an acceptable
24  medical source, the ALJ's reasons for rejecting his opinion were
    also specific and legitimate for the same reasons they were
25  germane.  See Carmickle, 533 F.3d at 1164 (when treating
26  physician's opinion is contradicted by other evidence in record,
27  ALJ must provide "specific and legitimate reasons" for
28  discounting it).

18

1    failed to cite supporting clinical findings was a germane — and
2    specific and legitimate — reason for rejecting it.  <u>See</u> <u>Molina</u>,
3    674 F.3d at 1111 (holding that ALJ properly discounted
4    physician's assistant's opinion when it "consisted primarily of a
5    standardized, check-the-box form in which she failed to provide
6    supporting reasoning or clinical findings, despite being
7    instructed to do so"); <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th
8    Cir. 1996) (holding that ALJ permissibly rejected treating
9    physicians' opinions because "they were check-off reports that
10   did not contain any explanation of the bases of their
11   conclusions"); <u>cf.</u> § 404.1527(c)(3) (more weight given "[t]he
12   more a medical source presents relevant evidence" and "[t]he
13   better an explanation" he provides to support opinion).

14        The ALJ gave no weight to Lanier's opinion also because it
15   was "inconsistent with the totality of the medical evidence of
16   record." (AR 23.)  Indeed, by April 2012, when Plaintiff was
17   declared permanent and stationary for workers'-compensation
18   purposes, her arm pain had "resolved," she had "little neck
19   pain," and she "was overall happy" with the results of her May
20   2011 neck surgery. (AR 935.)  Dr. Bergey opined that Plaintiff
21   was restricted to "[n]o repetitive motion right arm," "[l]imited
22   use of shoulder at and above shoulder level," and "[n]o lifting
23   greater than 20lbs," significantly less restrictive findings than
24   Lanier's. (AR 936.)  Plaintiff herself stated in her October
25   2012 function report that she could "lift 20 pound max," twice
26   what Lanier said she could lift just six months later. (AR 182;
27   <u>see also</u> AR 177 (in different section of function report,
28   Plaintiff stating "No lifting over 20lbs").)  Plaintiff's left

1  knee showed similar improvement after her October 2011 surgery.

2  By August 2012, she had improved range of motion, was "[w]alking

3  more," had no swelling or effusion, and treated any problems with

4  "[o]ccasional acetominophen [sic]." (AR 1080-81.) She was also

5  able to ride a bike. (AR 1075, 1086.) All this evidence was

6  inconsistent with Lanier's opinion that Plaintiff could not lift

7  more than 10 pounds and could sit only 15 minutes and stand only

8  30 minutes at a time. Thus, the ALJ properly rejected Lanier's

9  opinion as inconsistent with the record as a whole. <u>See</u> <u>Bayliss</u>

10 <u>v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005)

11 ("[i]nconsistency with medical evidence" is germane reason for

12 discounting lay opinion); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>,

13 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit

14 treating physicians' opinions that are conclusory, brief, and

15 unsupported by the record as a whole"); § 404.1527(c)(4) (more

16 weight given "the more consistent an opinion is with the record

17 as a whole").

18      The ALJ also rejected Lanier's opinion because it was

19 "nothing more than an egregious accommodation by the preparer to

20 his patient." (AR 23.) Apart from that conclusory statement,

21 however, the ALJ did not point to any evidence of actual

22 impropriety. (<u>See</u> AR 23); <u>cf.</u> <u>Lester</u>, 81 F.3d at 832 ("The

23 [Commissioner] may not assume that doctors routinely lie in order

24 to help their patients collect disability benefits" but "may

25 introduce evidence of actual improprieties . . . ."). Indeed,

26 nothing in the record suggests that Lanier was, for example,

27 "deliberately attempting to mislead the ALJ for the purpose of

28 helping claimant obtain benefits." <u>Nguyen v. Chater</u>, 100 F.3d

1462, 1465 (9th Cir. 1996).  This basis for rejecting Lanier's

opinion was therefore not legitimate.  <u>Cf.</u> <u>Ballesteros v. Astrue</u>,

No. ED CV 08-798-PLA, 2009 WL 1582926, at *7 (C.D. Cal. June 3,

2009) (finding unsupported ALJ's statement that treating

physician's opinion was "no more than an egregious accommodation"

to claimant because no evidence showed that he "embellished his

assessment of [claimant's] limitations in order to assist her

with her benefits claim").  The error was harmless, however,

because the ALJ gave other, legally valid reasons for giving no

weight to Lanier's opinion.  <u>See</u> <u>Stout v. Comm'r, Soc. Sec.</u>

<u>Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless when

it is "inconsequential to the ultimate nondisability

determination"); <u>see also</u> <u>Molina</u>, 674 F.3d at 1115.

Plaintiff is not entitled to remand on this ground.

**VI.  CONCLUSION**

Consistent with the foregoing, and under sentence four of 42

U.S.C. § 405(g),[12] IT IS ORDERED that judgment be entered

AFFIRMING the decision of the Commissioner, DENYING Plaintiff's

request for remand, and DISMISSING this action with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order

and the Judgment on counsel for both parties.


DATED:  <u>January 26, 2016</u>      <u>JEAN ROSENBLUTH</u>
                                JEAN ROSENBLUTH
                                U.S. Magistrate Judge

_____

[12] That sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record,
a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."